NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY<br>　　　　　　　Plaintiff,<br><br>v.<br><br>CHARLES EDWARD FALK,<br>　　　　　　　Defendant. | Civil Action No. 10-cv-02165 (SDW)<br><br><br>OPINION<br><br><br>September 27, 2011 |

**WIGENTON**, District Judge.

Before the Court is Plaintiff's, American Guarantee & Liability Insurance Company, Motion for Summary Judgment ("Plaintiff's Motion") and Defendant's, Charles Edward Falk, Cross Motion for Summary Judgment ("Defendant's Motion") pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Plaintiff's Motion and **DENIES** Defendant's motion.

I.　　BACKGROUND

This matter involves American Guarantee & Liability Insurance Company ("American Guarantee") and Charles Edward Falk, Esq. ("Falk"). American Guarantee provided Falk with professional liability insurance from November 29, 2006 to November 29, 2007. Falk was sued for legal malpractice related to legal services he provided while employed by a professional services corporation. Falk sought defense and indemnification from American Guarantee, who

agreed to defend and indemnify Falk under a reservation of rights. American Guarantee later filed this action seeking a declaratory judgment that it has no duty to defend or indemnify Falk. The issue before the Court involves an interpretation of the insurance policy and a determination of American Guarantee's duty to defend and indemnify Falk.

## II.  FACTS

Plaintiff American Guarantee is a New York corporation engaged in the insurance business. (Compl. ¶ 1.) Defendant Falk is an attorney licensed to practice law in the state of New Jersey. (Answer ¶ 3.) Falk is also a New Jersey resident. (*Id.*) From 1988 to 1999 and at times subsequent thereto, Falk practiced law as a solo practitioner in Cranford, NJ. *See* (Certification of Louis A. Bové ("Bové Cert."), Ex. A at 63:6-12, 64:8-16). From the early 1990's through October 31, 2000, Falk maintained his office on the first floor of a building located at 340 North Avenue, Cranford, NJ. *See* (Bové Cert., Ex. A at 54:14-56:4, 58:17-59:3.)

Moore Stephens, P.C. ("Moore Stephens"), formerly known as Mortenson & Associates, P.C., is a professional services corporation that is actively engaged in accounting and related services. *See* (Bové Cert., Ex. B.) From 1988 through October 31, 2000, and for a period of time prior thereto, Falk was a shareholder of Moore Stephens. *See id.*; *see also* (Bové Cert., Ex. A at 48:22-25.) Falk also held the position of Assistant Secretary. *See* (Bové Cert., Ex. B.) From 1999 through October 31, 2000, and for a period of time prior thereto, Falk was a salaried employee of Moore Stephens and maintained an office there. (Bové Cert., Ex. A at 48:20-25, 57:19-25, 49:1-6.) While employed at Moore Stephens, Falk worked primarily on tax matters. *See* (Bové Cert., Ex. A at 50:4-10.)

In 1999 and 2000, the Ventrice family, specifically Ann Ventrice, Raymond Ventrice and Kevin Ventrice, and certain Ventrice family businesses (collectively, the "Ventrices") were

2

clients of Moore Stephens.  *See* (Bové Cert., Ex. A at 131:15-132:1, 133:10-20.), (Bové Cert., Ex. E-F.)  Around that time, Falk, along with his colleagues at Moore Stephens, were engaged in the planning, calculation, preparation and implementation of a certain Qualified Personal Residence Trust for the Ventrices regarding property owned by Ann Ventrice.  *See id.*  During the time when Falk was rendering services to the Ventrices, Moore Stephens was directly billing the Ventrices for Falk's services.  *See* (Bové Cert., Ex. I), (Bové Cert., Ex. A at 142:10-18.)  Falk's relationship with the Ventrices was through Moore Stephens.  *See id.*  On or about October 31, 2000, Falk withdrew from Moore Stephens.  (Bové Cert., Ex. A at 54:14-16.)  On December 11, 2000, Falk communicated to one of the Ventrices that he left Moore Stephens and provided his new contact information.  *See* (Bové Cert., Ex. L.)

### III.    The Underlying Action

On or about March 31, 2008, Raymond and Kevin Ventrice, individually and as executors and beneficiaries of The Estate of Ann Ventrice, brought a civil complaint against Falk and Moore Stephens ("Ventrice Litigation").  On or about August 1, 2008, the Ventrices filed an amended complaint ("Ventrice Complaint") alleging, inter alia, that Falk committed various acts and omissions in the rendering of professional services that caused damages to the Ventrices.  *See* (Bové Cert. Ex. J ¶¶ 4, 8-20, 23, 25, 27-28, 30-31, and 33-34.)  The Ventrice Complaint asserted that as a result of acts and omissions in services rendered by Falk and Moore Stephens, the Ventrices suffered pecuniary loss in excess of one million dollars.  *See id.* at ¶ 25.  The Ventrice Complaint further alleged that the Ventrices suffered damages as a result of negligence by Falk and Moore Stephens.  *See id.* at ¶¶ 30-31.  Additionally, the Ventrice Complaint asserted that Falk violated Rules of Professional Ethics.  *See id.* at ¶¶ 33-34.  In the Ventrice Complaint, the Ventrices alleged that at all times relevant to the complaint, Falk was an employee of Moore

Stephens, performed services on behalf of Moore Stephens, and had his services billed through Moore Stephens. *See id.* at ¶ 27.

On or about October 5, 2007, Falk reported the Ventrice Litigation to American Guarantee. American Guarantee acknowledged the report on the same day, under a full reservation of rights. Falk had a policy with American Guarantee to protect himself against claims which are both made and reported during the effective dates of the policy and which are based on an act or omission in Falk's rendering or failure to render legal services in accord with the insurance agreement. Falk presented the Ventrice Litigation to American Guarantee and requested specific counsel to represent him in the matter. Once again, American Guarantee obliged, under a full reservation of rights.[1]

On April 29, 2010, American Guarantee filed the instant action seeking, inter alia, an order declaring it has no obligation to defend or indemnify Falk in the Ventrice Litigation. Alternatively, American Guarantee seeks an order declaring that it has no obligation to indemnify Falk apropos damages, legal fees, or costs and expenses paid to or incurred or charged by Falk in the Ventrice Litigation. On March 25, 2011, American Guarantee moved for Summary Judgment. On May 2, 2011 Falk cross-moved for Summary Judgment.

## IV.   LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be

---

[1] The facts in this paragraph have been stipulated to by the parties. *See* (Pl.'s Br. 15); (Def.'s Br. 7.)

insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact.  *Anderson*, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in "a light most favorable" to the nonmoving party.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521 (1991).  The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

V.   DISCUSSION

**Enforcing Insurance Policies**

An insurance policy is a contract that will be enforced as written, when its terms are clear, to fulfill the expectations of the parties.  *See Kampf v. Franklin Life Ins. Co.*, 33 N.J. 36, 43 (1960).  Generally, New Jersey courts interpret insurance policies "according to their plain and ordinary meaning."  *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175 (1992) (citing *Longobardi v. Chubb Ins. Co.*, 121 N.J. 530, 537 (1990)).  Where the terms of an insurance policy are ambiguous, they are construed in favor of the insured so as to give effect to the

insured's reasonable expectations. *See Doto v. Russo*, 140 N.J. 544, 556 (1995). Insurance policies that are ambiguous are construed in the insured's favor even if a "close reading" may prove otherwise. *See Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 595 (2001). However, when examining ambiguities of a policy, courts cannot rewrite a policy to benefit the insured. *See Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 N.J. 517, 529 (1989).

Regarding exclusionary clauses, New Jersey courts presume them to be valid and enforceable if they are "specific, plain, clear, prominent, and not contrary to public policy." *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997). "[I]n general, insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." *Am. Motorists Ins. Co. v. Sales Co.*, 155 N.J. 29, 41 (1998) (quoting *Princeton Ins. Co.*, 151 N.J. at 95). Consequently, policy exclusions are ordinarily strictly construed against the insurers. *See Aetna Ins. Co. v. Weiss*, 174 N.J. Super. 292, 296 (App. Div. 1980). If there are multiple interpretations of the policy language, courts apply the meaning that favors providing coverage to the insured. *Cobra Prods., Inc. v. Fed. Ins. Co.*, 317 N.J. Super. 392, 401 (App. Div. 1998). Nonetheless, "courts must be careful, [when interpreting policies,] not to disregard the 'clear import and intent' of a policy's exclusion." *Flomerfelt v. Cardiello*, 202 N.J. 432, 442 (2010) (citing *Westchester Fire Ins. Co. v. Cont'l Ins. Cos.*, 126 N.J. Super. 29, 41 (App. Div. 1973)).

### The Terms of the Insurance Policy

"An exclusion that is specific, plain, clear, prominent, and not contrary to public policy will be given effect." *Doto*, 140 N.J. at 559. The policy exclusion at issue in this case, section III (D) reads:

>   This policy shall not apply to any **Claim** based upon or arising out of, in whole or in part: . . .
>
>   D.   the **Insured's** capacity or status as
>
>   1.   an officer, director, partner, trustee, shareholder, manager or employee of a business enterprise, charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust;
>
>   . . . .

(Bové Cert., Ex. N.)  Both parties agree that the claims asserted against Falk in the Ventrice Complaint sound in legal malpractice for the violation of attorney ethics rules, seek monetary damages, and qualify as a "Claim" as that term is defined in the policy between the parties. American Guarantee argues that: (1) the terms of the policy exclusion are clear and unambiguous and preclude coverage for the claims asserted against Falk in the Ventrice Litigation, (2) the business enterprise exclusions should be enforced as written, and (3) it has the right to recover defense costs advanced in the Ventrice Litigation.  Falk argues that the policy exclusion is inapplicable because the claim in the Ventrice Complaint is covered by the insurance policy because the claim is for legal malpractice and Falk was providing legal services.  Falk also argues that the policy exclusion is inapplicable because of the ambiguity of the terms "business enterprise" and "arising out of."  We address only American Guarantee's first argument below.

"An insurer's duty to defend an action brought against its insured depends [on] a comparison [of] the allegations set forth in the complainant's pleading and the language of the insurance policy." *Flomerfelt*, 202 N.J. at 444.  In comparing the two documents, "it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation." *Id.* (citing *Ohio Cas. Ins. Co. v.*

7

*Flanagin*, 44 N.J. 504, 512 (1965)).  In examining the complaint, "doubts are resolved in favor of the insured." *Id.*  "[I]f a complaint contains multiple or alternative causes of action", an insurer will have a duty to defend its insured as long as any of the claims in the complaint are covered by the policy.  *See id.* (citing *Voorhees*, 128 N.J. at 174).  Where there are multiple theories of liability, an insurer has the option to either defend the insured with a reservation of its right to later dispute coverage, or refuse to defend the insured with the possibility of later reimbursing the insured if the claim is determined to be covered by the policy.  *See id.* at 445 (citing *Burd v. Sussex Mut. Ins. Co.*, 56 N.J. 383, 389-90 (1970)).  Nonetheless, where coverage cannot be determined from the face of the complaint, the insurer must defend the insured "until all potentially covered claims are resolved."  *See id.* at 447.  In determining an insurer's duty to defend, courts consider whether "if the allegations [in the complaint] are sustained, the insurer will be required to pay the resulting judgment." *Danek v. Hommer*, 28 N.J. Super. 68, 77 (1953).  "[I]n reaching a conclusion, doubts should be resolved in favor of the insured." *Id.*

     Falk's argument that American Guarantee has a duty to defend him is without merit.  Raymond and Kevin Ventrice sued Falk for legal malpractice in his capacity as an employee of Moore Stephens and not in Falk's capacity as a solo practitioner.  *See* (Bové Cert., Ex. J at ¶¶10-12.)  Section III (D) precludes Falk from being covered for claims arising from his conduct where he is not acting in his capacity as a solo legal practitioner. *See* (Bové Cert., Ex. N.)  When comparing the allegation in the complaint concerning legal malpractice and policy section III (D), it is clear that American Guarantee has no duty to defend Falk since Falk is being sued for conduct outside his capacity as a solo practitioner.  Falk contends that because the allegation in the Ventrice Complaint pertains to legal malpractice and because he was performing legal services while at Moore Stephens, American Guarantee should defend and indemnify him in the

8

Ventrice Litigation. (Pl.'s Br. 16-29.) Falk's argument fails because while a claim against him for legal malpractice would technically be covered by his policy with American Guarantee, his policy is meant to cover legal malpractice claims arising only out of his capacity as a solo practitioner. This is evident from the language in section III (D). *See* (Bové Cert., Ex. N.)

Falk emphasizes that during the time that he represented Ann Ventrice, he maintained a separate law practice in the same building as Moore Stephens. (Def.'s Br. 25.) This fact is irrelevant. Falk attempts to downplay the fact that he was a Moore Stephens employee; however, this fact is very important. Not only was Falk an employee of Moore Stephens with an office/desk on premises, but also Moore Stephens, and not Falk, billed Ann Ventrice for Falk's services and received payment. Accordingly, a reasonable jury would not differ as to whether the Ventrice's underlying claim of legal malpractice and Falk's liability stems at least in part if not entirely from Falk's capacity as Moore Stephens' employee.

Falk also argues that similar to *Niagara Fire Insurance. Co. v. Pepicelli*, 821 F.2d 216 (3d Cir. 1987) and *Jeffer v. National Union Fire Insurance*, 306 N.J Super. 82 (App. Div. 1997), the exclusion here seeks to protect against potential malpractice by a business in which the lawyer has an interest. (Def.'s Br. 22-29.) Falk's argument regarding *Pepicelli* and *Jeffer* fail for two reasons. First, Falk's reliance on *Pepicelli* is misleading because more than one policy exclusion was at issue in that case. The policy exclusion which Falk seeks to compare to section III (D) more resembles section III (E)[2]. The same is true regarding Falk's reliance on *Jeffer*. As this Court has established, the "clear import and intent" of the exclusionary language at issue is to preclude malpractice claims based on Falk's conduct outside of his capacity as a solo

---

[2] Section III. E states:
    This policy shall not apply to any **Claim** based upon or arising out of, in whole or in part: . . .
    E.    the alleged acts or omissions by any **Insured**, with or without compensation, for any business enterprise, whether for profit or not-for profit, in which any, **Insured** has a **Controlling Interest.**

9

practitioner.  Therefore, the allegation in the Ventrice Complaint concerning legal malpractice falls squarely within the ambit of policy section III (D).

Since this Court finds that the policy exclusion at issue is clear and unambiguous and precludes the claim of legal malpractice asserted against Falk in the Ventrice Complaint, it is unnecessary to consider the parties' additional arguments.

**CONCLUSION**

For the reasons stated above, Plaintiff's motion for summary judgment is **GRANTED** and Defendants' motion for summary judgment is **DENIED.**

s/Susan D. Wigenton, U.S.D.J.

Orig:  Clerk
Cc:    Madeline Cox Arleo, U.S.M.J.
       Parties